## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

LAURA J. VASQUEZ,

      Plaintiff,

v.                                        No. Civ. 13-777 LH/SMV

TIERRA DEL SOL HOUSING CORP.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Tierra Del Sol Housing Corporation's Motion for Summary Judgment and Memorandum in Support, filed May 6, 2014. (ECF No. 19) The Court, having reviewed the motion, briefs, evidence in the record, relevant law, and otherwise being fully advised, concludes that the motion is well-taken and shall be granted. In addition, Plaintiff's motion for leave to file a sur-reply (ECF No. 31) is denied. This case is dismissed with prejudice.

## A.  INTRODUCTION

Plaintiff Laura Vasquez alleges in this lawsuit that her former employer, Defendant Tierra Del Sol Housing Corporation, "intentionally discriminated against and constructively discharged" her on the basis of her pregnancy. (Compl. at 3, ECF No. 1-2) Plaintiff asserts three claims in her complaint: (1) 42 U.S.C. § 1981; (2) the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7 (2004); and (3) intentional infliction of emotional

distress. (*Id.*) Defendant has moved for summary judgment on all of Plaintiff's claims. (Mot. Summ. J., ECF No. 19)

## B.  FACTUAL BACKGROUND[1]

Defendant is a regional housing and economic development non-profit corporation that provides affordable housing in Southern New Mexico. (Declaration of Tammy El-Tawil ("El-Tawil Decl."), ECF No. 19-2, ¶ 2) During the time period at issue in this case, Defendant's Executive Director was Rose Garcia and the Human Resources Director and Controller was Tammy El-Tawil. (*Id.* ¶¶ 1-2)

Plaintiff was hired by Defendant in February 2010. (Pl. Dep. 27:7-9, Feb. 6, 2014, ECF No. 19-1) Plaintiff's position consisted of data entry and intake related duties for the Homeless Prevention Rehabilitation Program ("HPRP Program"). (Pl. Dep. 29:23, 30:21-25, 31:19-33:6) Plaintiff's position was funded by a grant and she was paid $10.00 per hour. (Pl. Dep. 30:25-31:1; El-Tawil Decl. ¶ 4) The grant was initially set to expire in July 2011, but was later extended to February 2012. (El-Tawil Decl. ¶ 4) Plaintiff's supervisor was Veronika Molina, and later, Ruben Trujillo after Ms. Molina transferred to another position. (Pl. Dep. 33:17-19, 36:18-23) Plaintiff first worked in Defendant's office located in Las Cruces, New Mexico. (Pl. Dep. 33:20-22, 43:23-44:3) She later moved to Defendant's office in Anthony, New Mexico, when the HPRP program and its staff transferred to that location. (*Id.*)

Plaintiff became pregnant and notified her supervisors, Ms. Molina and Mr. Trujillo, and the human resources director, Ms. El-Tawil, of her pregnancy and intention to take maternity leave for the birth of her baby. (Pl. Dep. 39:10-25; 41:2-42:2) At the end of April or early May

---

[1] Except as otherwise noted, the following asserted facts are undisputed. Because this is summary judgment, the Court views the facts and all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *See S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted).

2011,[2] she took maternity leave for approximately seven weeks. (Pl. Dep. 39:2-6) During Plaintiff's maternity leave, another employee filled-in for Plaintiff and completed data entry for the HPRP program. (El-Tawil Decl. ¶ 5)

Plaintiff returned to work on June 21, 2011. (Pl. Dep. 38:19-22) On that date, Plaintiff learned that Defendant had decided to retain the fill-in employee to finish data entry for the HPRP program and that she was being reassigned to a different position on a new grant. (El-Tawil Decl. ¶¶ 6-7) Ms. Garcia made the decision to reassign Plaintiff. (El-Tawil Decl. ¶ 8) According to Ms. El-Tawil's declaration, Plaintiff's new position was as a loan processor with the same pay as her previous position. (El-Tawil Decl. ¶ 7) Plaintiff's supervisor in this position was Art Murrujo. (El-Tawil Decl. ¶ 7) Ms. El-Tawil described Plaintiff's job duties as a loan processor to consist primarily of meeting with clients and providing credit counseling. (El-Tawil Decl. ¶ 7) Ms. El-Tawil also indicated that in Plaintiff's new position, Defendant "anticipated that Plaintiff, along with other employees, might be required to travel, perhaps up to one time a month, for an overnight trip to other areas in southern New Mexico serviced by the grant." (El-Tawil Decl. ¶ 9)

Plaintiff gives a different account of her return to work after taking maternity leave. Plaintiff stated in her deposition that although she learned on her first day back that she was being reassigned to a different position, Ms. Garcia and Ms. El-Tawil did not inform her of her new job title or job responsibilities. (Pl. Dep. 42:16-43:5, 47:20-25) Plaintiff also discovered that

---

[2] The parties dispute when Plaintiff began her maternity leave, with Defendant asserting that the leave began in April 2011 and Plaintiff contending in her response that it was May 2011. (Mot. Summ. J. at 2; Pl.'s Resp. at 5) This factual dispute is not material for purposes of the Court's analysis. *See Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001) (in order to avert summary judgment, "the contested facts must be *material*. In other words, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

her office had been given to another employee, and she ended up working from the computer lab using a laptop. (Pl. Dep 43:13-15, 44:12-16, 48:16-17) Plaintiff continued doing data entry for the HPRP program for "a couple of weeks" after returning to work because she had no job description and "didn't know what to do" in her new position. (Pl. Dep. 48:21-49:2) Although the timing of this is not clear from Plaintiff's deposition, Ms. Molina explained Plaintiff's new job duties to her at some point. (Pl. Dep. 46:14-47:2) Plaintiff was given an office and a new laptop after she informed Ms. Molina that she was uncomfortable working in the computer lab. (Pl. Dep. 49:4-19, 50:4-5) After moving into this office, Plaintiff began doing the loan processor job duties that Ms. Molina had explained to her. (Pl. Dep. 49:20-25, 50:10-20) On August 5, 2011, Plaintiff received an email informing her that Ms. Garcia had requested that Plaintiff provide an action plan for her position and a weekly description of job duties. (Pl. Dep. 51:3-6) Plaintiff submitted these documents via email. (Pl. Dep. 51:25-52:2, 52:14-25) Art Murrujo was copied on these emails because Plaintiff knew by then that he was her supervisor. (Pl. Dep. 53:11-13)

In early August 2011, Plaintiff went on one overnight work trip to Artesia and Lovington, New Mexico. (Pl. Dep. 55:19-56:7; El-Tawil Decl. ¶ 9) Also sometime in early August 2011, Ms. Molina informed Plaintiff that she would need to travel two or three times a month as a loan processor. (Pl. Dep. 56:11-25; 57:2-7) Ms. Molina learned of this travel requirement from Ms. Garcia. (*Id.*) Plaintiff told Mr. Murrujo that she was going to resign because she was unable to travel more than one time a month. (Pl. Dep. 60:1-17) Mr. Marrujo asked Plaintiff to reconsider her decision to resign. (Pl. Dep. 60:13-22, 63:17-64:11) On August 19, 2011, Plaintiff submitted a letter of resignation to Art Marrujo giving two weeks notice, in which she stated:

This is a letter to advise you of my decision to terminate my employment with Tierra Del Sol Housing Corporation. I intend to give you two weeks notice starting August 18, 2011 and my last day of employment will be Sept 2, 2011.

I thank you sincerely for the opportunity you gave me working for such a wonderful company, I have been very happy, and have learned a lot. But unfortunately I feel that I cannot travel every month, my little girl is too small and I'm not able to do this at the moment, I prefer to let the job go now, than in the future telling you that I'm not able to travel.

Again, I thank you for everything you have done for me and I am regretful about leaving. I have very fond memories or my time and experiences here at Tierra Del Sol Housing Corporation.

(Pl. Dep. Ex. 2, ECF No. 19-1) Plaintiff worked for one more week following submission of this resignation letter. (Pl. Dep. 65:2-4) On August 26, 2011, Ms. El-Tawil came to Plaintiff's office and gave her a letter from Ms. Garcia, which stated that Defendant was "accepting [Plaintiff's] resignation as of August 26, 2011" and that Plaintiff would be paid for the days she had worked through that date. (ECF No. 46-2, Ex. 4) Thus, Plaintiff's final day of employment with Defendant was August 26, 2011.

The Court notes that Plaintiff's response brief describes a number of alleged comments made by other employees regarding Plaintiff while she was pregnant and after she returned from maternity leave. (Pl.'s Resp. at 2-3, ECF No. 46) Defendant has challenged the admissibility of these statements, arguing that the statements constitute hearsay. (Def.'s Reply at 2-3, ECF No. 27) The Court will discuss the content and admissibility of these statements in its analysis.

## C.  PROCEDURAL HISTORY

On June 5, 2012, Plaintiff submitted a Charge of Discrimination to the El Paso Area Office of the United States Equal Employment Opportunity Commission (EEOC), alleging that she was subjected to gender-based discrimination, pregnancy discrimination, and retaliation by Defendant. (ECF No. 19-1 at 22) On August 10, 2012, the EEOC mailed a "Dismissal and

Notice of Rights" letter to Plaintiff informing her that the EEOC was closing its file on Plaintiff's charge and further advising Plaintiff that she had ninety days within which to commence a lawsuit under federal law. (*Id.* at 24)

On July 16, 2013, Plaintiff filed her original complaint in state district court asserting three claims: Section 1981, NMHRA, and intentional infliction of emotional distress. Defendant removed the case to federal court on August 21, 2013, on the basis of federal question jurisdiction. (ECF No. 1) On May 6, 2014, Defendant moved for summary judgment on the three claims stated in Plaintiff's original complaint. (ECF No. 19) Before responding to the summary judgment motion, Plaintiff filed a motion seeking leave to amend her complaint by adding a cause of action under Title VII and removing the § 1981 claim. (ECF No. 23) The Court denied Plaintiff's motion and consequently, the only federal claim in this lawsuit remains the § 1981 claim. (ECF No. 47) Plaintiff was permitted by the Court to file an amended response to Defendant's motion for summary judgment (ECF Nos. 45 & 46), and Defendant has filed a reply brief. (ECF No. 27)

## D.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis omitted). Rather, only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248. Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

## E.  ANALYSIS

### 1.  Plaintiff's Claim under 42 U.S.C. § 1981[3]

Defendant argues that it is entitled to summary judgment on Plaintiff's § 1981 claim because § 1981 does not apply to claims for gender-based discrimination, including discrimination claims based on pregnancy. (Mot. Summ. J. at 15) The Court agrees. While claims for sex discrimination are recognized under Title VII of the Civil Rights Act of 1964,[4] the Supreme Court and the Tenth Circuit Court of Appeals have held that a claim for sex discrimination is not cognizable under § 1981. *See Runyon v. McCrary,* 427 U.S. 160, 167 (1976) (noting § 1981 does not address gender or religious categorization); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir. 1979) ("Section 1981 does not apply to sex or religious discrimination."). Rather, Section 1981 applies to claims of racial discrimination. *See*

---

[3] The Court notes that Plaintiff moved for leave to amend her complaint to substitute her § 1981 claim with a claim under Title VII of the Civil Rights Act of 1964. (ECF No. 23) The Court recently denied Plaintiff's motion (ECF No. 47), and therefore, the only federal claim in this case is Plaintiff's § 1981 claim.

[4] "The Pregnancy Discrimination Act makes it clear that Title VII's prohibition against sex discrimination includes pregnancy, childbirth, and related medical conditions." *Metz v. Merrill Lynch*, 39 F.3d 1482, 1491 n. 10 (10th Cir. 1994).

*Runyon*, 427 U.S. at 168; *Manzanares*, 593 F.2d at 971. Because Plaintiff has not asserted facts related to any alleged racial discrimination by Defendant during her employment, she has not stated a viable claim under § 1981. Therefore, the Court determines that Defendant is entitled to summary judgment on this claim.

### 2. Plaintiff's NMHRA Claim[5]

Plaintiff asserts in her complaint that Defendant violated the NMHRA by "intentionally discriminat[ing] and constructively discharg[ing]" her on the basis of "her recent pregnancy and ensuing newborn childcare requirements." (Compl. at 3) Defendant contends that it is entitled to summary judgment on Plaintiff's NMHRA claim for three reasons: (1) Plaintiff failed to exhaust her administrative remedies for this claim; (2) Plaintiff has not established a prima facie case of discrimination under the NMHRA; and (3) even if a prima facie case is established, Defendant had legitimate, non-discriminatory reasons for its actions. (Mot. Summ. J. at 8-15)

### a. Exhaustion of Administrative Remedies

Defendant initially argues that it is entitled to summary judgment on Plaintiff's NMHRA claim because Plaintiff failed to exhaust her administrative remedies for this claim prior to filing suit in state district court. (Mot. Summ. J. at 8-9) The NMHRA requires an individual to "exhaust his or her administrative remedies against a party before bringing an action in district court." *See Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 130 N.M. 238, 22 P.2d 1188; *see also Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 20, 127 N.M. 282, 980 P.2d 65 (stating that

---

[5] As set forth above, Defendant has been granted summary judgment on Plaintiff's sole federal claim (§ 1981), over which the Court had original subject matter jurisdiction. Plaintiff's two remaining claims—NMHRA and intentional infliction of emotional distress—are purely state law claims. The Court has the statutory authority to exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367(a). In the interest of judicial economy and considering the current stage of the proceedings, the Court will exercise its supplemental jurisdiction over Plaintiff's state claims.

"the exhaustion of administrative remedies is a prerequisite to suit under the NMHRA . . . and a failure to exhaust administrative remedies may mean that the district court lacks subject-matter jurisdiction.").

Under the administrative grievance procedures set forth in the NMHRA, an individual is required to file a complaint with the New Mexico Human Rights Division ("the Division") within three hundred days after the alleged unlawful discriminatory practice occurred. NMSA 1978, § 28-1-10(A) (2005). The complainant may then proceed through the Division's administrative process for resolving the complaint, as set forth in § 28-1-10(B)-(C), (E)-(J), or the complainant "may request and shall receive an order of nondetermination from the director without delay after the division's receipt of the complaint and in jointly filed cases, after the federal complaint has been closed." Section 28-1-10(D). "An order of nondetermination signals that the person who filed the complaint has fully complied with the NMHRA grievance procedures and may proceed to court." *Mitchell-Carr*, 1999-NMSC-025, ¶ 16. The New Mexico Supreme Court has recognized that certain administrative procedures required by the NMHRA, including the filing of a complaint, may be satisfied by complying with comparable procedures under federal law due to the terms of a worksharing agreement in place between the EEOC and the Division as well as state regulations.[6] *See Sabella v. Manor Care, Inc.*, 1996-NMSC-014, ¶¶ 9-14, 121 N.M. 596, 915 P.2d 901.

_____

[6] Although the worksharing agreement is not part of the record, the Court will take judicial notice that such an agreement existed at all relevant times because the agreement is referenced in the order of nondetermination issued by the Division to Plaintiff. (ECF No. 46-2, Ex. 7); *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (noting "that the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

Here, Defendant raises two arguments as to why Plaintiff failed to exhaust her remedies: first, that there is no evidence establishing that Plaintiff filed a complaint with the Division, and second, that Plaintiff failed to obtain an order of nondetermination before commencing suit. (Mot. Summ. J. at 8-9) The Court concludes that neither argument has merit.

Initially, Defendant does not dispute that Plaintiff filed a complaint with the EEOC by submitting a charge of discrimination form on June 5, 2012. The New Mexico Supreme Court has held that if an individual "initially files a complaint with the EEOC, that complaint will be deemed to have been properly filed with the Division as well." *Mitchell-Carr*, 1999-NMSC-025, ¶ 13. Plaintiff has therefore satisfied the NMHRA's filing requirements.[7] *See Sabella*, 1996-NMSC-014, ¶¶ 9-14 (holding that the plaintiff complied with the NMHRA's filing requirements where she filed a complaint with the EEOC and not with the Division); *see also* 9.1.1.8(F)(2) NMAC (stating that for purposes of complying with the filing time limit set forth in the NMHRA, "a complaint which is first filed with any duly authorized civil rights agency holding a work sharing agreement or memorandum of understanding with the division shall be deemed to have been filed with the division as of the date on which the complaint was first filed with any of these agencies.").

---

[7] Although Defendant points out that the Texas Workforce Commission Civil Rights Division is listed on the EEOC charge of discrimination form submitted by Plaintiff, Defendant has not presented any evidence showing that the EEOC transmitted the charge to the Texas agency rather than the Division, which was the appropriate state agency with subject matter jurisdiction in this matter. In the absence of evidence establishing otherwise, the Court will presume that the EEOC transmitted a copy of the charge of discrimination to the Division in accordance with its regulations and the worksharing agreement in place with the Division. *See* 29 C.F.R. § 1601.13 (2009) (requiring the EEOC to forward a copy of the charge of discrimination to the state agency with subject matter jurisdiction over the charges); *see Mitchell-Carr*, 1999-NMSC-025, ¶ 13 (describing the terms of the worksharing agreement between the EEOC and the Division, and further noting that the agreement contemplates "dual filed charges" such that a complaint initially filed with the EEOC "will be deemed to have been properly filed with the Division as well").

Plaintiff has also responded to Defendant's motion for summary judgment by providing an order of nondetermination that was issued by the Division on May 12, 2014. (ECF No. 46-2, Ex. 7) Although the order was issued by the Division after Defendant moved for summary judgment in this matter, the Court nevertheless finds that the order of nondetermination is sufficient to establish that Plaintiff exhausted her administrative remedies. In *Mitchell-Carr*, the Supreme Court specifically held that the plaintiffs had exhausted their administrative remedies under the NMHRA although they obtained orders of nondetermination after commencing suit in district court and while a motion to dismiss was pending before the court. *Mitchell-Carr*, 1999-NMSC-025, ¶ 21. By obtaining an order of nondetermination, Plaintiff has shown that she has exhausted her administrative remedies and may proceed in this lawsuit. *See id.* at ¶ 16 ("An order of nondetermination signals that the person who filed the complaint has fully complied with the NMHRA grievance procedures and may proceed to court."); *see also Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1273-74 (D.N.M. 2011) (determining that orders of nondetermination issued after the complaint was filed in district court cured plaintiffs' defective exhaustion of remedies since there was no indication that the prematurely filed complaint deterred the Division or the EEOC "from performing their administrative duties, or that the [d]efendants suffered any prejudice.").

Defendant argues, however, that Plaintiff's order of nondetermination is inadmissible because it is hearsay and not authenticated. (Def.'s Reply at 5) Defendant claims that the order constitutes hearsay because it is "an out-of-court statement used to prove that the [Division] issued Plaintiff a letter of nondetermination." (*Id.*) Under Defendant's reasoning, the other administrative documents in this case, including the EEOC charge of discrimination and EEOC right-to-sue letter placed in the record by Defendant, would also constitute hearsay because they

are out-of-court statements used to prove that a particular administrative document was issued by a federal or state agency. The Court rejects this argument and concludes that the order of nondetermination is not hearsay. *See, e.g.*, *Meyer v. Gibson*, 17 F. App'x 821, 823 n. 1 (10th Cir. 2001) (unpublished) (stating that "orders from administrative agencies are admissible under Fed.R.Evid. 803(8)(C), the public records exception to the hearsay rule").[8] Defendant has not pointed to any circumstances indicating a lack of trustworthiness in the order of nondetermination aside from questioning the order's authenticity because it was issued after Defendant filed its summary judgment motion. The Court has already explained above that the date of the order is not an issue. As to Defendant's argument that the order is not authenticated, the Court disagrees as the order bears the seal of the State of New Mexico and has a signature. *See* Fed. R. Evid. 902(1) (providing that a document is self-authenticating if it bears the seal of a state agency and has a signature purporting to be an execution). The Court therefore finds that Plaintiff's order of nondetermination is admissible for purposes of ruling on Defendant's motion for summary judgment.

Based on the foregoing, the Court concludes that Defendant's argument that Plaintiff failed to exhaust her administrative remedies is without merit, and the Court will now proceed to consider whether Defendant is entitled to summary judgment on the merits of Plaintiff's NMHRA claim.

*b. Merits of NMHRA Claim*

1. Relevant Law under the NMHRA

---

[8] The Court relies upon *Meyer* and other unpublished opinions in ruling on Defendant's motion for summary judgment. The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

Under the NMHRA, it is an unlawful discriminatory practice for "an employer, unless based on a bone fide occupational qualification or other statutory provision, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . sex." Section 28-1-7(A). Pregnancy is recognized as a protected status under the NMHRA. *See Behrmann v. Phototron Corp.*, 1990-NMSC-073, 110 N.M. 323, 795 P.2d 1015; *see also* UJI 13-2307A NMRA (uniform jury instruction for alleged discrimination based on Section 28-1-7 of the NMHRA, and accompanying committee commentary stating that pregnancy is recognized as a protected status by New Mexico courts); *see also* 9.1.1.7(HH) NMAC (New Mexico Human Rights Division regulations defining sex discrimination under the NMHRA to include "pregnancy, childbirth, or related medical condition"). The Court will rely on federal civil rights adjudication as applicable because the New Mexico Supreme Court has indicated that courts may look to federal case law for guidance in interpreting the NMHRA. *See Gonzales v. New Mexico Dep't of Health*, 2000-NMSC-029, ¶ 20, 129 N.M. 586, 11 P.3d 550; *see also Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12, 127 P.3d 548.

In order to prevail on her NMHRA claim, Plaintiff must demonstrate, by direct or indirect evidence, that Defendant intentionally discriminated against her on the basis of her pregnancy. *See Sonntag*, 2001-NMSC-015, ¶ 11; *see also Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (stating that a plaintiff is required to show intentional discrimination through either direct or indirect evidence in order to prevail on NMHRA claim). In the absence of direct evidence of discrimination, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework is used to indirectly prove intentional discrimination. *See Juneau*, 2006-NMSC-002, ¶ 9; *see also Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 10-11, 109 N.M. 514,

13

787 P.2d 433. Pursuant to the *McDonnell Douglas* framework, "an employee bears the initial burden of demonstrating a prima facie case of discrimination, which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action." *Juneau*, 2006-NMSC-002, ¶ 9. "The employee then has the opportunity to rebut the employer's proferred reason as pretextual or otherwise inadequate." *Id.*

In response to Defendant's argument that it is entitled to summary judgment on the NMHRA claim, Plaintiff contends that there is direct evidence of discrimination and alternatively, that she has made a prima facie showing of discrimination under the *McDonnell Douglas* burden-shifting framework. (Pl.'s Resp. at 12-25) The Court will consider each of these arguments in turn.

2.   Application of Direct Evidence Standard

Plaintiff argues that summary judgment is improper on her NMHRA claim because there is direct evidence of pregnancy discrimination based on alleged comments made by Ms. Garcia, Defendant's Executive Director, to another employee, Ms. Molina, regarding Plaintiff during and after her pregnancy. (Pl.'s Resp. 11-14)

Direct evidence of discrimination is "evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status." *Sanders v. Southwestern Bell Tel. L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). Stated differently, "[d]irect evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (explaining that "direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."). Direct evidence of discrimination "requires proof of an existing policy which itself constitutes discrimination, or oral or written statements

14

on the part of a defendant showing a discriminatory motivation." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854-55 (10th Cir. 2007) (internal citation and quotation marks omitted).

Here, Plaintiff relies on the following statements allegedly made by Ms. Garcia as constituting direct evidence of discrimination: (1) comments regarding Plaintiff's attendance history and work absences; (2) a statement expressing a preference for hiring male employees to replace pregnant female employees; (3) a statement directing Ms. Molina to "due process those pregnant bitches and get rid of them [Plaintiff and another pregnant employee]"; and (4) statements that Plaintiff could not continue working for two weeks after submitting her resignation. (Pl.'s Resp. at 13-14) Defendant first challenges the admissibility of these statements, arguing that they are hearsay because the statements were made by Ms. Garcia to Ms. Molina and later recounted by Ms. Molina during deposition testimony given in another lawsuit. (Def.'s Reply at 2-3, 6) The Court will assume, for purposes of its analysis, that Ms. Garcia's statements are not hearsay and are admissible.[9]

The Court initially considers Ms. Garcia's alleged statements regarding Plaintiff's work attendance during and after her pregnancy. Specifically, upon learning that Plaintiff was pregnant, Ms. Garcia told Ms. Molina that Plaintiff was "going to be calling in sick all the time, or more often." (Molina Dep. 121:7-9, 122:9-11, Mar. 14, 2013, ECF No. 46-2) Ms. Garcia also made comments such as "[Plaintiff] is missing work again" and "[Plaintiff] is out again" during and after Plaintiff's pregnancy. (Molina Dep. 126:7-10, 127:24-25, 140:24-141:8) The Court is not persuaded by Plaintiff's contention that these statements are direct evidence of discrimination. While these statements may demonstrate Ms. Garcia's personal bias that

---

[9] The Court notes that Plaintiff has filed a motion seeking leave to file a sur-reply to address the admissibility of Ms. Molina's deposition testimony. (ECF No. 31) Because the Court is assuming without deciding that the deposition is admissible, Plaintiff's motion will be denied.

pregnant women have poor work attendance, the statements may also be interpreted as entirely benign in nature—that is, they simply reflect Ms. Garcia's observations regarding Plaintiff's attendance history. As the Tenth Circuit has explained, "a statement that can plausibly be interpreted two different ways-one discriminatory and the other benign-does not *directly* reflect illegal animus, and, thus, does not constitute direct evidence." *See Hall*, 476 F.3d at 855 (emphasis added). Because the Court would have to infer discriminatory intent from Ms. Garcia's statements regarding Plaintiff's work attendance, the statements are not direct evidence. *See Riggs*, 497 F.3d at 1118 (stating that "evidence is not 'direct' if an inference of discrimination is required").

Next, Plaintiff claims that Ms. Garcia expressed a preference to Ms. Molina for hiring male employees to replace pregnant employees, including Plaintiff. Specifically, while Plaintiff was on maternity leave, Ms. Garcia allegedly said to Ms. Molina that "you need to get rid of her and hire somebody else that's not going to be out" and directed her to "hire a male."[10] (Molina Dep. 138:22-139:3) While these particular statements may demonstrate a personal bias for male employees over pregnant female employees, "[c]omments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and *acted* on his or her discriminatory beliefs." *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (emphasis added). As the Tenth Circuit has emphasized, "stray remarks in the workplace based on sex stereotypes do not constitute direct evidence of

---

[10] Ms. Molina also testified that Ms. Garcia told her to replace a pregnant employee "with a male because they are providers and they won't have to be out on – take any time to have babies." (Molina Dep. 122:21-23) Although Plaintiff contends in her response that she was the pregnant employee that Ms. Garcia was referring to, Ms. Molina's deposition testimony indicates that the comment was regarding another pregnant employee, Alejandra Trejo. (Molina Dep. 122:16-23) Because the Court was not provided with any evidence concerning what, if any, actions were taken by Defendant with regard to Ms. Trejo, the Court was unable to consider Ms. Garcia's statement regarding Ms. Trejo in its analysis.

discrimination . . . [unless the plaintiff shows] that the employer actually relied on gender in making its decision." *Id.* at 1217. Here, there is no evidence that Ms. Garcia decided to reassign Plaintiff to the loan processor position based on her belief that males were more suitable employees than females. In fact, the record shows that a female employee replaced Plaintiff on the HPRP program, initially on a fill-in basis while Plaintiff was on maternity leave and later, permanently when Plaintiff returned to work and was reassigned to the loan processor position. (Molina Dep. 129:12-13; El-Tawil Decl. ¶¶ 5-6) Thus, while Ms. Garcia's statements expressing a preference for male employees might constitute circumstantial evidence of discrimination, they are not direct evidence. *See Ramsey v. City and Cty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) (holding that supervisor's statement that women were better suited for certain jobs was not direct evidence of gender discrimination because there was no evidence that the supervisor acted on these discriminatory beliefs); *see also Hall*, 476 F.3d at 855 (explaining that "[s]tatements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements.").

Plaintiff also relies on Ms. Garcia's statement to Ms. Molina regarding Plaintiff and another pregnant employee on November 2, 2010. After attending a meeting in Mesilla, Ms. Molina testified that Ms. Garcia instructed her to "due process those pregnant bitches and get rid of them or the grant was going to fail." (Molina Dep. 132:12-15) The grant referenced by Ms. Garcia was the CED grant. (*Id.*) While Ms. Garcia's comment was inappropriate and boorish, the Court determines that it also does not constitute direct evidence of discrimination because the Court fails to see a direct link between this comment and the decision made several months later to reassign Plaintiff to the loan processor position. "[D]iscriminatory statements do not qualify as

direct evidence if the context or timing of the statements is not *closely linked* to the adverse decision." *See Tabor*, 703 F.3d at 1216 (emphasis added); *see also Juneau*, 2006-NMSC-002, ¶ 45 (Minzner, J., concurring) ("A plaintiff can provide direct evidence of discrimination if he or she can show that there is a *nexus* between discriminatory comments, and the disputed employment decision." (emphasis added)). In this case, there is no evidence connecting Ms. Garcia's statement to Plaintiff's reassignment. Because the evidence in the record shows that this was an isolated statement unrelated to the adverse treatment Plaintiff claims she suffered upon her return from maternity leave, Ms. Garcia's statement is not direct evidence of discrimination. *See Riggs*, 497 F.3d at 1118 (holding that employee had failed to establish direct evidence of discrimination where there was no showing of temporal proximity or causal nexus between the discovery of the plaintiff's age and the adverse treatment she received).

Finally, Ms. Garcia's statements to Ms. Molina after Plaintiff submitted her resignation do not qualify as direct evidence. Plaintiff specifically cites to Ms. Garcia's comments that Plaintiff "need[ed] to be gone" and could not remain employed "on [Ms. Garcia's] dime" for the entire two week notice period that was specified in Plaintiff's resignation letter. (Molina Dep. 179:10-15) These comments are susceptible to a number of interpretations and can plausibly be interpreted as benign in nature—that is, they may reflect nothing more than an employer's decision to accept an employee's resignation early and not permit a resigning employee to remain on payroll. Because a finder of fact would have to infer that Ms. Garcia made these statements for discriminatory reasons based on Plaintiff's recent pregnancy, the Court concludes that these statements also do not constitute direct evidence of discrimination.

In sum, the Court concludes that Plaintiff has failed to produce direct evidence of discrimination on the basis of her pregnancy. While the statements made by Ms. Garcia are

inappropriate and reflect a personal bias or opinion regarding pregnant females, a finder-of-fact would have to infer that these statements were causally connected to the alleged adverse employment decisions taken against Plaintiff upon her return from maternity leave. Because the statements do not on their face demonstrate that the employment decisions related to Plaintiff were reached for discriminatory reasons, they do not constitute direct evidence.

   3.   Application of *McDonnell Douglas* framework

   Having determined that Plaintiff has failed to establish direct evidence of discrimination, the Court turns to consider the parties' arguments under the *McDonnell Douglas* framework. As stated earlier, under this framework, Plaintiff has the initial burden of demonstrating a prima facie case of discrimination. *Juneau*, 2006-NMSC-002, ¶ 9. "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Orr*, 417 F.3d at 1149. Here, Defendant primarily contends that Plaintiff cannot establish a prima facie case of discrimination because the evidence in the record does not show that she suffered an adverse employment action. (Mot. Summ. J. 9-13) Consistent with Tenth Circuit case law in this area, the New Mexico Supreme Court has stated that "[a]n adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment." *Ulibarri v. State of N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 16, 139 N.M. 193, 131 P.3d 43. Examples of adverse employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Orr*, 417 F.3d at 1150.

Plaintiff contends that she suffered the following adverse employment actions: (1) termination in the form of Defendant's early acceptance of her resignation; (2) constructive discharge; (3) her reassignment to a different position without being informed of her job title or duties, the loss of her office, and being required to travel; and (4) Defendant's failure to hire her for a position she applied for that did not require travel. (Pl.'s Resp. at 16-19) The Court considers each of these arguments in turn to determine whether genuine disputes of material facts remain for resolution at trial, thereby making summary judgment improper.

a.   *Actual or Constructive Discharge*

Proof of either an actual discharge (i.e., termination) or constructive discharge satisfies the adverse employment action requirement of a prima facie case. *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). Although Plaintiff does not dispute that she submitted a letter of resignation, she contends that she was actually terminated when Defendant did not permit her to continue working until her intended last day following submission of the resignation letter and instead accepted her resignation as effective one week early. (Pl.'s Resp. at 16-17) The Court is not convinced by Plaintiff's argument that she was terminated from her position. The Court recognizes that termination of employment is "clearly an adverse employment action," *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008). However, unlike the typical termination scenario where an employer engages in conduct "that would logically lead a prudent person to believe his tenure has been terminated," *Fischer*, 525 F.3d at 979, the undisputed evidence here shows that it was Plaintiff, not Defendant, who took steps to end her employment. Specifically, Plaintiff informed her supervisor, Mr. Marrujo, that she intended to resign and she subsequently submitted a resignation letter despite Mr. Marrujo urging her to reconsider her decision. (Pl. Dep. 60:1-17, 63:17-64:11; Pl. Dep. Ex. 2, ECF No.

19-1) There is no evidence that Defendant gave Plaintiff any written or verbal indication it intended to terminate her before Plaintiff voluntarily took these steps to resign her employment. In the Court's view, Defendant's early acceptance of Plaintiff's resignation did not result in a significant change in the conditions of employment because Plaintiff had already, on her own accord, decided to materially alter the terms of her employment by resigning from her position.[11] The Court, thus, rejects Plaintiff's characterization of her resignation as a termination.

Plaintiff also contends that she was constructively discharged. (Pl.'s Resp. at 19) *See Fischer*, 525 F.3d at 980 (indicating that an employee may satisfy the adverse employment action requirement by demonstrating constructive discharge). The New Mexico Supreme Court has stated that constructive discharge "permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure." *Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 9, 137 N.M. 192, 109 P.3d 280. "An employee must allege facts sufficient to find that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Id.* at ¶ 10. "The bar is quite high for proving constructive discharge" as the plaintiff

---

[11] Plaintiff also fails to cite to any authority supporting her argument that an employer's early acceptance of a resignation constitutes an adverse employment action. To the contrary, the Court observes that a number of other courts have held that an employer's acceptance of an employee's resignation prior to the employee's intended last day does not convert the resignation into a termination. *See Wilson v. Bradley Petroleum, Inc.*, 2013 WL 4502266, *2 (D. Colo. Aug. 23, 2013) ("An employer's early acceptance of an employee's resignation does not constitute an 'adverse employment action' under Title VII"); *see also Curby v. Solutia, Inc.*, 351 F.3d 868, 872 (8th Cir. 2003) (holding that "[a]n employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action"); *see also Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 64 n. 4 (5th Cir. 1980) (determining that the company's acceptance of an employee's resignation effective immediately upon receipt of her two weeks notice did not constitute a discharge); *see also Vasquez v. Potomac Hosp., Inc.*, 2010 WL 3984685 *5-6 (E.D.Va. Oct. 8, 2010) (rejecting plaintiff's argument that he suffered retaliatory termination when his employer chose to accept his resignation as effective one week early).

"must show that she had no other choice but to quit." *Id.* The Supreme Court has noted that, in many cases, "the circumstances surrounding resignation are not egregious enough to support a claim." *Id.* at ¶ 12.

In this case, the summary judgment record does not demonstrate that Plaintiff suffered employment conditions that were so severe that a reasonable person in her situation would have felt compelled to resign. To support her constructive discharge claim, Plaintiff relies primarily upon her reassignment to the loan processor position and changed work conditions: the loss of her office, Defendant's alleged failure to inform of her new job title, supervisor, or job responsibilities, and the travel required by the new position. (Pl.'s Resp. at 17-19) However, these factual circumstances do not rise to the level that a reasonable person would find intolerable. Plaintiff's reassignment did not result in a reduction in pay. *See Gormley*, 2005-NMSC-003, ¶ 11 (explaining that an extreme cut in pay would rise to the level of constructive discharge). Although Plaintiff contends that her working conditions following her reassignment were unbearable, she does not dispute that Defendant took steps to remedy her concerns by giving her another office and by Ms. Molina instructing Plaintiff as to her new job duties. (Pl. Dep. 49:4-19, 50:5-20) Consequently, Plaintiff's work conditions were not so severe that a reasonable person in her situation would still feel compelled to resign. *See Gormley*, 2005-NMSC-003, ¶ 13 (determining that constructive discharge was not established where employee's job performance was criticized, his duties were changed and he received a reduction of pay and lost guaranteed work hours); *see also Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857-58 (10th Cir. 2000) (holding that employee did not show constructive discharge where employee's desk was moved, her telephone calls were monitored, other employees acted in a chilly manner towards her, and her supervisor suggested that she transfer to another department). Moreover, the

Court notes that Plaintiff's supervisor, Mr. Marrujo, asked her to reconsider her decision when she informed him of her intent to resign. *See Fischer*, 525 F.3d at 982 (stating that the fact the employer urged the plaintiff to reconsider his decision to leave the company supported an inference that the plaintiff was not forced to resign). Under the totality of the circumstances, Plaintiff has not presented a genuine issue of material fact as to whether she had no other choice but to resign. Thus, Plaintiff has not demonstrated facts on which a jury could find that she was constructively discharged.

      *b. Reassignment*

      Apart from her actual and constructive discharge arguments, Plaintiff contends that her reassignment to the loan processor position constituted an adverse employment action. "Reassignment of job duties is not automatically actionable." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (internal citation omitted). Rather, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* Based on the circumstances present here, the Court determines that Plaintiff's reassignment was not a sufficiently significant change to qualify as an adverse action. As stated above, Plaintiff received the same pay in her new position as her prior position and Defendant remedied Plaintiff's concerns regarding her changed working conditions by providing her with another office and a new computer. (El-Tawil Decl. ¶ 7; Pl. Dep. 49:4-19, 50:4-5) Likewise, Plaintiff's contention that she suffered materially adverse actions because Defendant allegedly failed to provide her with a job title or job description at the outset of her reassignment is without merit because Plaintiff herself acknowledges that Ms. Molina instructed her as to her new job responsibilities and she was already performing these tasks when she

submitted her resignation. (Pl. Dep. 46:14-47:2, 49:20-25, 50:10-20) Thus, Plaintiff's reassignment and the accompanying changed work conditions do not constitute adverse employment actions. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (stating that "a mere inconvenience or an alteration of job responsibilities" is not considered an adverse employment action).

Plaintiff also contends that her reassignment was an adverse employment action because the loan processor position required her to travel. Although the parties dispute the amount of travel that was required in the new position, the question is whether the travel requirement, regardless of frequency, posed a significant change in responsibilities such that it turned Plaintiff's reassignment into an adverse employment action. The Court concludes that it does not. Plaintiff fails to offer any evidence as to how much, if any, travel was required in her old position; consequently, the Court can only speculate as to whether the travel required by her new position was a significant change in responsibilities from the perspective of a reasonable person in Plaintiff's position. Based on the evidence in the record, the Court is not convinced that the Court is that Plaintiff's reassignment was an adverse employment action simply based on the travel requirement. *Cf. Hill v. Steven Motors, Inc.*, 97 F. App'x 267, 279 (10th Cir. 2004) (unpublished) (holding that employer's decision to reassign employee to a position requiring travel after the employee suffered a stroke did not constitute an adverse employment action).

c. *Failure to Hire*

In addition, Plaintiff contends that she suffered an adverse employment action when Defendant failed to hire her for a non-travel position that she applied for after returning from maternity leave. (Pl.'s Resp. at 19) The Court is unable to consider this argument because it is based on inadmissible hearsay evidence. In support of this argument, Plaintiff relies solely on

Ms. Molina's deposition testimony and specifically, Ms. Molina's testimony regarding her conversation with Isias Amaya, another employee. This conversation is hearsay as it is being offered to show that Plaintiff applied for another position and that Mr. Amaya did not hire Plaintiff at the direction of Ms. Garcia. The testimony consists of out-of-court statements by Ms. Garcia to Mr. Amaya and then, Mr. Amaya's statements to Ms. Molina. Plaintiff has offered no argument as to why this testimony is admissible. Nor has the Court been directed to any other admissible evidence in the record regarding Plaintiff's alleged application for another position. As such, the Court is unable to consider this evidence and Plaintiff's accompanying argument. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (holding "that [Fed.R.Civ.P.] 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment").

In sum, the Court concludes that Plaintiff has not established a prima facie case of discrimination because she has failed to show that she suffered an adverse employment action. Accordingly, Defendant is entitled to summary judgment on Plaintiff's NMHRA claim.

### 3. Plaintiff's Intentional Infliction of Emotional Distress Claim

Defendant has also moved for summary judgment on Plaintiff's claim for intentional infliction of emotional distress. (Mot. Summ. J. at 15-17) In her response, Plaintiff voluntarily dismisses this claim. (Pl.'s Resp. at 28) Consequently, the Court will dismiss Plaintiff's claim for intentional infliction of emotional distress with prejudice.

## F.  CONCLUSION

Based on the foregoing analysis, Defendant's motion for summary judgment (ECF No. 19) is granted. Accordingly,

1.  Plaintiff's § 1981 claim is dismissed with prejudice.

25

2.  Plaintiff's claim under the NMHRA is dismissed with prejudice.

3.  Plaintiff's claim for intentional infliction of emotional distress is dismissed with prejudice.

In addition, Plaintiff's motion for leave to file a sur-reply (ECF No. 31) is denied. Because there are no remaining claims in this matter, this lawsuit is dismissed with prejudice.

**IT IS SO ORDERED.**


_____

SENIOR UNITED STATES DISTRICT JUDGE